IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| C.B. | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | FILE NO.: _____ |
| NASEEB INVESTMENTS, INC. | : | |
| d/b/a THE HILLTOP INN a/k/a | : | |
| ECONOLODGE | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Matthew B. Stoddard
Janelle E. Zabresky
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
F: 470-467-1300
matt@legalhelpga.com
janelle@legalhelpga.com

***Attorneys for Plaintiff***

## Summary

1.     This lawsuit is brought under the Sex Trafficking Victim's Protection Act to secure justice for C.B. who was trafficked out of the Hilltop Inn in Conley Georgia by Timothy Lyle Chappell just weeks after turning fifteen.

2.     Trafficker Timothy Lyle Chappell was already a convicted sex offender at the time, and he is now serving time in federal prison for his role in trafficking C.B.

3.     This lawsuit seeks to hold Defendant Naseeb Investments, Inc. d/b/a The Hilltop Inn a/k/a Econolodge (sometimes hereinafter "Defendant Hilltop Inn") liable for its role in C.B.'s trafficking because Defendant Hilltop Inn (i) provided a venue for the trafficking to occur, (ii) shut its eyes to the problem of C.B. being trafficked, and (iii) did these things in order to make money.

4.     The purpose of this lawsuit is to empower and seek justice for C.B., and to send a message to Defendant that Defendant needs to alter its behavior.

## The Parties

5.     C.B. is a resident and citizen of the State of Georgia who was born in 1995.

6.     Defendant Hilltop Inn is a domestic corporation with its principal place of business located at 3140 Moreland Ave, Conley Georgia – the site of the Hilltop

Inn and the Econolodge.

## **Procedural Issues**

7.      Given the nature of the case, C.B. is identified only by initials to prevent public disclosure of her name.  Plaintiff's counsel will disclose C.B.'s full name to defense counsel as soon as defense counsel is identified.  When filing the Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for C.B. to proceed anonymously.  Upon information and belief, Defense counsel consents to Plaintiff proceeding without publicly disclosing her name.

8.      Defendant Hilltop Inn can be served through its registered agent Atul Patel at 8031 Highpoint Drive, Jonesboro, Clayton County Georgia.

9.      Defendant Hilltop Inn was properly served with process in this matter.

10.     Defendant Hilltop Inn is subject to the jurisdiction and venue of this Court.

11.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Act which is a law of the United States.

12.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Conley Georgia which is within the Northern District of Georgia Atlanta division. *See* 28 U.S.C.

1391.

13.    While C.B.'s trafficking took place in June of 2010, this case is not barred by the statute of limitations because C.B. was a minor at the time of the offense, and this action was brought within 10 years of C.B. reaching 18 years of age. *See* 18 U.S.C. 1595(c)(2).

**Operative Facts**

14.    At all relevant times, Defendant Hilltop Inn owned, operated, maintained, controlled, and managed a parcel of land with multiple motel buildings and which is located at 3140 Moreland Avenue, Conley Georgia.  Defendant calls one of the extended stay motel buildings the Econolodge and the other extended stay motel building the Hilltop Inn.  Both buildings are located on the same parcel – DeKalb County Parcel ID 15 018 03 012.

15.    The facility operates an extended stay motel where each room opens to a parking lot common area.

16.    Around April of 2010, registered sex offender Timothy Lyle Chappell checked into the Hilltop Inn in Conley Georgia as a paying customer.  He rented one room.

17.    Shortly thereafter, and from his room at the Hilltop Inn, Chappell posted an advertisement on Craigslist.com where he advertised a free room for rent.

18. Fourteen-year-old C.B. responded to the advertisement but did not immediately agree to stay in the free room.

19. Chappell and C.B. began communicating online and talking on the phone, and eventually Chappell coerced C.B. into meeting him and staying in his free room.

20. Chappell next went to Defendant Hilltop Inn's front desk and requested a second room next to his current room.

21. Defendant Hilltop Inn complied with the request and provided Chappell a second room. Chappell paid Defendant for that second room.

22. Chappell dispatched an unknown person to pick up C.B. and bring her to the free room, and the unknown person brought C.B. to the Hilltop Inn.

23. It was immediately apparent to C.B. that that Chappell had misrepresented who he was, and that Chappell was much older than he had indicated. C.B. became scared.

24. Once at the Hilltop Top Inn, C.B. and Chappell met in the common area and had a long communication which included Chappell directing C.B. that she would be working as a prostitute.

25. Eventually Chappell ordered C.B. into the room that he rented for C.B., and he ordered C.B. not to leave the room and not to open the door. This was the

"free room" that Chappell had advertised.

26.    C.B. lived out of this room for more than 48 but under 72 hours.

27.    While at the Hilltop Inn, Chappell orally and vaginally raped C.B.  C.B. asked Chappell to stop, and he did not.  Condoms were sometimes used.

28.    While at the Hilltop Inn, Chappell used his credit card to post prostitution advertisements about C.B. on Backpage.com.

29.    Men responded to the advertisements, and when the men showed up at the facility, Chappell ordered C.B. to perform sexual acts with the men.

30.    While at the Hilltop Inn, C.B. was raped by at least four men who responded to the Backpage.com advertisement. Condoms were sometimes used.

31.    In each case, C.B. was sold by Chappell.

32.    C.B. was not allowed to keep any of the money that was received as a result of the sexual assaults.  Chappell explained that C.B. owed Chappell money for the room where the trafficking occurred, that C.B. could not leave because this money was owed, and that the money from the trafficking was Chappell's money because Chappell had paid for the motel room.

33.    While at the Hilltop Inn, one of the men who responded to the Backpage.com advertisement became upset when he met C.B. because she looked so young.  This man began talking loudly and voicing his frustration at showing up

to have sex with a prostitute and finding out that C.B. was clearly under the age of 18.  This man eventually left without sexually assaulting C.B.

34.   After this incident, there was a call to C.B.'s room, and C.B. answered the phone.  The caller stated that he was a guest at the facility, that he saw C.B. arrive at the facility, and that he was concerned for C.B.'s safety.  C.B. was afraid and told him everything was fine.

35.   Chappell continued to sell C.B. as a prostitute after this incident.

36.   Throughout her stay, if C.B. denied Chappell's demands, Chappell would threaten C.B., curse at C.B., reminded C.B. that he had previously been to prison, and tell C.B. to do as instructed or else there would be violence.

37.   C.B. was afraid.  She was fifteen and had no money.  She believed that if she tried to leave, that Chappell would hurt her.  She did not know how to leave if she wanted to do so.

38.   Eventually C.B. convinced one of the men who sexually assaulted here (one of the "Johns") to drive her home after the sexual assault.  This is how C.B. left the Hilltop Inn.

## **<u>Sex Trafficking Allegations</u>**

39.   Minor sex trafficking includes recruiting, enticing, harboring,

transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act who is under the age of 18. *See* 18 U.S.C. § 1591(a), *et seq.*

40.     At all relevant times, C.B. was a victim of minor sex trafficking at Defendant's facility.

41.     Forced labor includes providing or obtaining the labor or services of a person by force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, abuse of the legal process, threatened abuse of the legal process, OR by means of any scheme, plan, or pattern intended to cause the person to believe that if the person did not perform such labor or services that person would suffer serious harm or physical restraint. *See* 18 U.S.C. 1589(a)

42.     At all relevant times, C.B. was a victim of forced labor.

43.     Defendant knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000 and the United Nations Palermo Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children also in 2000.

44.     Defendant knew or should have known that the Atlanta metro area was a hub of sex trafficking and that the crime was prevalent in the city including at extended stay hotels.

45.     Defendant knew or should have known that since 2007, the Atlanta

metro-area's sex trafficking economy was worth almost $300,000,000.00 annually.

46.    Without a venue or crime scene, a sex trafficking venture ceases to exist.  Defendant, for a fee, provided the crime scene – a private and anonymous venue for the fifteen-year-old C.B. to be sold for sex at its extended stay motel.

47.    Hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

48.    C.B. was trafficked for sex at the Hilltop Inn, where she was an invitee, in June 2010.

49.    Chappell operated openly and brazenly at the Hilltop Inn.

50.    Chappell coerced C.B. into arriving at the property, rented a second room next to his room, demanded (while in the common area) that C.B. work as a prostitute at the property, engaged in disputes in the common area with a potential "John" who was angry with Chappell because C.B. was a minor, cursed at C.B. in the common area, and threatened C.B. in the common area.

51.    There is no dispute that C.B. was trafficked at the Hilltop Inn by

Chappell. Chappell ultimately agreed to a plea deal where he acknowledged that such trafficking took place.

52. By receiving rent money for the rooms, Defendant either (i) knowingly benefitted financially for participating in a venture to traffic C.B. for sex and/or force C.B. into sex labor, OR (ii) participated in the venture with reckless disregard of the facts.

53. While C.B. was trafficked at the Hilltop Inn, C.B. exhibited numerous well-known and visible signs of a minor sex trafficking victim in the common areas, of which Defendants knew or should have known, including her age and inappropriate appearance, physical deterioration, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, and monitoring and control by Chappell.

54. While she was trafficked at the Hilltop Inn, C.B.'s room evidenced numerous well-known and visible signs of sex trafficking of which Defendant knew or should have known. These signs included a fifteen-year-old having her own room with multiple condoms and condom wrappers in that room and with a man over 30 years her senior in the room next door.

55. While C.B. was trafficked at the Hilltop Inn, many older men visited her room and each for short periods of time. These visits occurred primary during

the night.  Defendant knew or should have known that the number of daily visits by older male visitors was obviously indicative of minor sex trafficking, and Defendant failed to control or monitor the frequent male visitors.

56.    Defendant had actual or constructive knowledge of the minor sex trafficking and other serious criminal activity that was existing on the property and in the surrounding areas prior to C.B.'s sex trafficking.

57.    Defendant had actual or constructive knowledge that C.B. was being trafficked at their hotel.

58.    As a direct and proximate result of Defendant's acts and omissions, C.B. suffered substantial physical, emotional, and psychological harm and other damages.

59.    Defendant knew or should have known of steps to take to prevent the sex trafficking of C.B. at the Hilltop Inn.

60.    Defendant failed to implement appropriate steps to prevent child sex trafficking at the Hilltop Inn.

61.    Defendant negligently failed to train their employees, managers, housekeepers, and agents on appropriate steps to recognize and prevent child sex trafficking at the Hilltop Inn.

62.    Defendant had actual and constructive knowledge of the need to

maintain, secure, inspect, patrol and manage the premises, but negligently failed to do so.

63.  Defendant had actual and constructive knowledge of the dangerous and hazardous conditions existing at the Hilltop Inn and the surrounding high crime area.

64.  C.B.'s sex trafficking was foreseeable to Defendant because, among other reasons, Defendant knew or should have known that (i) Chappell was a convicted sex offender out on probation who was living at their extended stay motel, (ii) Chappell sought and obtained a second room, (iii) Chappell verbally abused C.B. in the common area and kept close watch over C.B. in the common area, (iv) C.B. was a scantily clad fifteen year old child of a different race who was being ordered around by Chappell in the common area and clearly not a family member, (v) there was a loud dispute with a potential "John" about C.B. being a minor, (vi) there were older men arriving and leaving C.B.'s room during the night hours – always one at a time and always staying for a short period, (vii) the hotel cleaning staff observed the condoms / condoms wrappers in the room of a fifteen year old girl was staying by herself, (viii) and other reasons to be shown.

**Statutory Liability**

65.     In violation of the Trafficking Victims Protection Reauthorization Act[1] ("TVPRA"), 18 U.S.C. § 1595(a) and 18 U.S.C. § 1589(a), Defendant knowingly benefitted from participation in a venture that Defendant knew or should have known engaged in acts in violation of the TVPRA.

66.     Defendant knowingly benefited from C.B.'s sex trafficking by receiving rent money for the room where C.B. was staying and rent money for the room where Chappell was staying.

67.     Defendant provided Chappell with the necessary venue for C.B.'s minor sex trafficking to occur, and as a result, multiple men paid money so that they could rape C.B. – a fifteen-year-old girl – at the Hilltop Inn.

68.     The venture in which Defendant participated as in or affecting interstate commerce for numerous reasons including the use of credit card / debit card machines for the purchase of the rooms, the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the requirement and dealings with franchisors (such as Econolodge) to ensure that certain standards were met, the use of credit cards to post advertisements through Backpage.com for selling C.B. in a

---

[1] Signed into law in 2008.

commercial sex act, the posting of advertisements through Craigslist.com for a free room, the internet chats between Chappell and C.B., the pre-meeting phone conversations between Chappell and C.B., the use of interstate highways to transport C.B. to the motel, and other reasons to be proven at trial.

69.    Defendant knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant, its employees, and its agents had the opportunity to observe C.B. at the hotel and there were signs that she was (i) under the age of eighteen, and (ii) being trafficked.

70.    Defendant is directly and vicariously liable under §§ 1589(a) and/or 1595(a) for the actions of its employees, agents, and representatives.

71.    Defendant is joint and severally liable with Chappell and any other non-party actors who participated in the sex trafficking venture for the indivisible injuries that the venture proximately caused to C.B.

72.    C.B. has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant's participation in this sex trafficking venture.

73.    Defendant is liable for Plaintiff C.B.'s damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

### Damages

74.    As a proximate and foreseeable result of the Defendant's violation of the TVPRA, C.B. sustained personal injuries, mental and emotional injuries, pain, suffering, mental anguish, and other damages to be proven at trial.

75.    Plaintiff brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

  a. Personal injuries;

  b. Past, present and future pain and suffering;

  c. Disability;

  d. Disfigurement;

  e. Mental anguish;

  f. Loss of the capacity for the enjoyment of life;

  g. Loss of earning capacity;

  h. Lost wages;

  i. Diminished capacity to labor;

  j. Incidental expenses;

k.    Past, present and future medical expenses;

l.    Permanent injuries;

m.    Attorney's fees;

n.    Punitive damages; and

o.    Consequential damages to be proven at trial.

76.    Punitive damages should be imposed upon the Defendant without limitation or cap for its actions which are explained more fully above.

77.    Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

**<u>Prayer for Relief</u>**

WHEREFORE, Plaintiff prays for a judgment against the Defendant and for the following:

1)    That process and summons issue requiring Defendant to appear as provided by law to answer the allegations of the Complaint;

2)    Plaintiff be awarded actual damages in amounts to be shown at trial;

3)    Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendant;

4)      Punitive damages be imposed upon the Defendant;

5)      Plaintiff be awarded a trial by jury; and

6)      Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.


This 13th day of October, 2020.


/s/ Matthew B. Stoddard
Matthew B. Stoddard, Esq.
Ga. Bar No.: 558215
Janelle E. Zabresky, Esq.
Ga. Bar No.: 385383
THE STODDARD FIRM
1534 N Decatur Road
P: 470-467-2200
F: 470-467-1300
matt@LegalHelpGa.com
janelle@LegalHelpGa.com
**Attorneys for Plaintiff**