# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| C.B. | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | FILE NO.: 1:20-CV-04213-AT |
| NASEEB INVESTMENTS, INC. | : | |
| d/b/a THE HILLTOP INN a/k/a | : | |
| ECONOLODGE | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT – 1st AMENDED

Matthew B. Stoddard
Janelle E. Zabresky
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
F: 470-467-1300
matt@legalhelpga.com
janelle@legalhelpga.com

***Attorneys for Plaintiff***

# TABLE OF CONTENTS

Summary..................................................................................................3

The Parties............................................................................................3

Procedural Issues...................................................................................4

Operative Facts.......................................................................................5

Chappell Violated 18 U.S.C. 1591(a)(1) ................................................9

Chappell Violated 18 U.S.C. 1589(a)(2) and (4)...................................11

Defendant Knew of the Heightened Risk of Sex Trafficking At Motels...............12

Defendant Knew Or Should Have Known About C.B.'s Trafficking.....................16

Civil Beneficiary Claims Under 18 U.S.C. 1595(a)..................................19

Count 1: Civil Beneficiary Sex Trafficking............................................21

Count 2: Civil Beneficiary Labor Trafficking.........................................23

Movement in Interstate Commerce.........................................................25

Proximate Cause and Damages..............................................................25

Prayer for Relief....................................................................................27

## Summary

1. This lawsuit is brought under the Sex Trafficking Victim's Protection Act to secure justice for C.B. who was trafficked out of the Hilltop Inn in Conley Georgia by Timothy Lyle Chappell just weeks after turning fifteen.

2. Trafficker Timothy Lyle Chappell was already a convicted sex offender at the time, and he is now serving time in federal prison for his role in trafficking C.B.

3. This lawsuit seeks to hold Defendant Naseeb Investments, Inc. d/b/a The Hilltop Inn a/k/a Econolodge (sometimes hereinafter "Defendant Hilltop Inn") liable for its role in C.B.'s trafficking because Defendant Hilltop Inn (i) provided a venue for the trafficking to occur, (ii) shut its eyes to the problem of C.B. being trafficked, and (iii) did these things in order to make money.

4. The purpose of this lawsuit is to empower and seek justice for C.B., and to send a message to Defendant that Defendant needs to alter its behavior.

## The Parties

5. C.B. is a resident and citizen of the State of Georgia who was born in 1995.

6. Defendant Hilltop Inn is a domestic corporation with its principal place of business located at 3140 Moreland Ave, Conley Georgia – the site of the Hilltop

Inn and the Econolodge.

## **Procedural Issues**

7.      Given the nature of the case, C.B. is identified only by initials to prevent public disclosure of her name.  Plaintiff's has disclosed C.B.'s full name to defense counsel.   Defense counsel consents to Plaintiff proceeding without publicly disclosing her name.

8.      Defendant Hilltop Inn can be served through its registered agent Atul Patel at 8031 Highpoint Drive, Jonesboro, Clayton County Georgia.

9.      Defendant Hilltop Inn was properly served with process in this matter.

10.     Defendant Hilltop Inn is subject to the jurisdiction and venue of this Court.

11.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act which is a law of the United States.

12.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Conley Georgia which is within the Northern District of Georgia Atlanta division. *See* 28 U.S.C. 1391.

13.     While C.B.'s trafficking took place in June of 2010, this case is not

barred by the statute of limitations because C.B. was a minor at the time of the offense, and this action was brought within 10 years of C.B. reaching 18 years of age. *See* 18 U.S.C. 1595(c)(2).

**<u>Operative Facts</u>**

14. Starting in 2006 and to the present, Defendant Hilltop Inn owned, operated, maintained, controlled, and managed a parcel of land with multiple motel buildings which are located at 3140 Moreland Avenue, Conley Georgia. The buildings are located on the same parcel – DeKalb County Parcel ID 15 018 03 012.

15. From 2006 until some period of 2010, Defendant called both buildings the Hilltop Inn.

16. At some point in 2009, Defendant Hilltop Inn signed a franchise agreement to make one of the two buildings an Econolodge franchise, but the transition did not actually take place until 2010.

16. After the transition in 2010, Defendant called one of the motel buildings the Econolodge and the other motel building the Hilltop Inn.

17. One building on the parcel has a parking lot and a three-story structure with a lobby, open air staircases and open-air hallways that lead to motel rooms. The open-air hallways, open air staircases, lobby, and parking lot are "common area"

used by residents and guests of the Defendant.

18. The other building on the parcel has a parking lot and an enclosed structure with interior hallways that lead to hotel rooms. The parking lot and interior hallways leading to rooms, and the lobby are "common area" used by residents and guests of Defendant.

19. Around April of 2010, registered sex offender Timothy Lyle Chappell checked into the Hilltop Inn in Conley Georgia as a paying customer. He rented one room from Defendant Hilltop Inn. Defendant Hilltop Inn received money for the room.

20. Upon information and belief, at the time of check-in or shortly thereafter, Defendant Hilltop Inn learned that Chappell was a registered sex offender and that he was currently on probation.

21. Shortly after checking in, and from his room at the Hilltop Inn, Chappell posted an advertisement on Craigslist.com where he advertised a free room for rent.

22. Fourteen-year-old C.B. responded to the advertisement but did not immediately agree to stay in the free room. C.B. informed Chappell that she was 14 years old and about to turn 15.

23. Chappell and C.B. began communicating online and talking on the

phone, and eventually Chappell coerced C.B. into meeting him and staying in his free room.

24. Chappell next went to Defendant Hilltop Inn's front desk and requested a second room next to his current room.

25. Defendant Hilltop Inn complied with the request and provided Chappell a second room. Chappell paid Defendant for that second room.

26. Chappell dispatched an unknown person to pick up C.B. and bring her to the free room, and the unknown person brought C.B. to the Hilltop Inn.

27. It was immediately apparent to C.B. that that Chappell had misrepresented who he was, and that Chappell was much older than he had indicated. C.B. became scared.

28. Once at the Hilltop Top Inn, C.B. and Chappell met in the parking lot / open hallway areas and had a long communication which included Chappell directing C.B. that she would be working as a prostitute.

29. Eventually Chappell ordered C.B. into the room that he rented for C.B., and he ordered C.B. not to leave the room and not to open the door. This was the "free room" that Chappell had advertised.

30. C.B. lived out of this room for more than 48 but under 72 hours.

31. While at the Hilltop Inn, Chappell orally and vaginally raped C.B. C.B.

asked Chappell to stop, and he did not.  Condoms were sometimes used.

32.	While at the Hilltop Inn, Chappell used his credit card to post prostitution advertisements about C.B. on Backpage.com.

33.	Men responded to the advertisements, and when the men showed up at the facility, Chappell ordered C.B. to perform sexual acts with the men.

34.	While at the Hilltop Inn, C.B. was raped by at least four men who responded to the Backpage.com advertisement. Condoms were sometimes used.

35.	In each case, C.B. was sold by Chappell.

36.	C.B. was not allowed to keep any of the money that was received as a result of the sexual assaults.  Chappell explained that C.B. owed Chappell money for the room where the trafficking occurred, that C.B. could not leave because this money was owed, and that the money from the trafficking was Chappell's money because Chappell had paid for the motel room.

37.	While at the Hilltop Inn, one of the men who responded to the Backpage.com advertisement became upset when he met C.B. because she looked so young.  This man began talking loudly and voicing his frustration at showing up to have sex with a prostitute and finding out that C.B. was clearly under the age of 18.  This man eventually left without sexually assaulting C.B.

38.	This loud discussion about C.B. being an underage prostitute would

have been heard by anyone who was in the parking lot, the neighboring rooms, and / or the open-air hallway.

39. After this incident, there was a call to C.B.'s room, and C.B. answered the phone. The caller stated that he was a guest at the facility, that he saw C.B. arrive at the facility, and that he was concerned for C.B.'s safety. C.B. was afraid and told him everything was fine.

40. Chappell continued to sell C.B. as a prostitute after this incident.

41. Throughout her stay, if C.B. denied Chappell's demands, Chappell would threaten C.B., curse at C.B., remind C.B. that he had previously been to prison, and tell C.B. to do as instructed or else there would be violence.

42. C.B. was afraid. She was fifteen and had no money. She believed that if she tried to leave, that Chappell would hurt her. She did not know how to leave if she wanted to do so.

43. Eventually C.B. convinced one of the men who sexually assaulted her (one of the "Johns") to drive her home after the sexual assault. This is how C.B. left the Hilltop Inn.

## Chappell Violated 18 U.S.C. § 1591(a)(1) "Sex Trafficking"

44. Minor sex trafficking includes recruiting, enticing, harboring,

transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act who is under the age of 18. *See* 18 U.S.C. § 1591(a), *et seq.*

45.     Chappell recruited, enticed, harbored, transported (through the use of an agent), obtained, maintained, patronized, and solicited C.B. for commercial sex acts while C.B. was under the age of eighteen.

46.     Chappell used threats of force and coercion to induce C.B. to commit commercial sex acts while she was under the age of 18.

47.     Chappell's threats of force and coercion included cursing at C.B., reminding C.B. that he had previously been to prison, telling C.B. to do as instructed or else there would be violence, lying to C.B. about his age and the circumstances of her "free room" to induce C.B. to arrive at the facility without money or transportation to leave, and other actions to be proved at trial.

48.     When C.B. had sex at the Hilltop Inn, Chappell received money for that commercial sex act.

49.     At all relevant times, Chappell was aware that C.B. was under the age of 18.

50.     At all relevant times, C.B. was a victim of minor sex trafficking at Defendant's facility.

51.     Chappell violated 18 U.S.C. § 1591(a)(1) by knowingly recruiting,

enticing, harboring, providing, advertising, and soliciting Plaintiff C.B. knowing that C.B. had not obtained the age of 18 years and will be caused to engage in commercial sex acts.

52. Chappell also violated 18 U.S.C. § 1591(a)(1) by knowingly recruiting, enticing, harboring, providing, advertising, and soliciting Plaintiff C.B. knowing that means of force, threats of force, and/or coercion would be used to cause C.B. to engage in commercial sex acts.

## Chappell Violated 18 U.S.C. § 1589(a)(2) & (4) "Labor Trafficking"

53. Forced labor includes providing or obtaining the labor or services of a person by force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, abuse of the legal process, threatened abuse of the legal process, OR by means of any scheme, plan, or pattern intended to cause the person to believe that if the person did not perform such labor or services that person would suffer serious harm or physical restraint. *See* 18 U.S.C. 1589(a).

54. Chappell obtained the labor and services of C.B. by threats of serious harm and by means of a scheme / plan intended to cause C.B. to believe that if she did not perform such labor and services, that C.B. would suffer serious harm.

55. The "labor or services" was commercial sex services.

56. The threats of serious harm and scheme / plan included cursing at C.B., reminding C.B. that he had previously been to prison, telling C.B. to do as instructed or else there would be violence, lying to C.B. about his age and the circumstances of her "free room" to induce C.B. to arrive at the facility without money or transportation to leave, and other actions to be proved at trial.

57. At all relevant times, C.B. was a victim of forced labor at Defendant's facility.

58. Chappell violated 18 U.S.C. § 1589(a)(2) by knowing providing the labor and/or services of C.B. by means of serious harm or threats of serious harm to that person or another person.

59. Chappell violated 18 U.S.C. § 1589(a)(4) by knowing providing the labor and/or services of C.B. by means of a scheme, plan, or pattern intended to cause C.B. to believe that if C.B. did not perform such labor or services, that C.B. would suffer serious harm or physical restraint.

**Defendant Knew Of The Heightened Risk of Sex Trafficking at Motels**

60. Defendant knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000 and the United Nations Palermo Protocol to Prevent, Suppress, and

Punish Trafficking in Persons, Especially Women and Children also in 2000.

61.    Defendant knew or should have known that the Federal Bureau of Investigations ranked Atlanta one of the worst cities in the country for child sex trafficking.[1]

62.    Defendant knew or should have known that the Atlanta metro area was a hub of sex trafficking and that the crime was prevalent in the city including at motels.

63.    Defendant knew or should have known of the Atlanta Journal Constitution's 2001 publication of Jane O. Hansen's groundbreaking series *Selling Atlanta's Children* which explained that hotels are complicit in sex trafficking trade.[2]

---

[1] Chris Swecker testimony to the Commission on Security and Cooperation in Europe United States Helsinki Commission, Exploiting Americans on American Soil: Domestic Trafficking Exposed, The Federal Bureau of Investigation, (June 7, 2005), available at https://archives.fbi.gov/archives/news/testimony/exploiting-americans-onamerican-soil-domestic-trafficking-exposed (last visited Nov. 26, 2020)

[2] Jane O. Hansen, *Selling Atlanta's Children: Runaway Girls Lured into the Sex Trade are being Jailed for Crimes while their Adult Pimps go Free*, The Atlanta Journal-Constitution, Jan. 7, 2001; Jane O. Hansen, *The Pimps: Prostitution's Middle Man Slides by in Court*, The Atlanta Journal-Constitution, Jan. 7, 2001; Jane O. Hansen, *Feds, Police Elsewhere Finding Solutions*, The Atlanta Journal-Constitution, Jan. 8, 2001 ("Atlanta City Councilman Derrick Boazman said it's also time to crack down on hotels where adult men take children. '***We need to go after these hotel owners who should know what's happening when someone walks in with a 13-year-old girl***,' Boazman said."); Jane O. Hansen, *When Danger is as Close as a Phone*, The Atlanta Journal-Constitution, Jan. 9, 2001; Jane O. Hansen, *Police Plan Child Prostitution Unit*, The Atlanta Journal-Constitution, April 28, 2001.

64. Defendant knew or should have known that since 2007, the Atlanta metro-area's sex trafficking economy was worth almost $300,000,000.00 annually.

65. Defendant knew or should have known that without a venue or crime scene, a sex trafficking venture ceases to exist.

66. Defendant knew or should have known that motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

67. Defendant knew or should have known that there is a heightened risk of sex trafficking at their motel as compared to other types of businesses. *Cf. Sun Tr. Banks, Inc. v. Killebrew*, 266 Ga. 109, 111 (1995) (Sears, J., concurring) ("[T]he banking industry itself anticipates that criminal activity will frequently occur at ATMs."); *Killebrew v. Sun Trust Banks*, 221 Ga. App. 679, 680-81 (1996) (physical precedent only) ("it would be difficult to say that a criminal occurrence at an ATM is unforeseeable as a matter of law. Indeed, such a conclusion could be reached only by turning 'foreseeability' into a legal term of art totally divorced from its meaning

in everyday usage.")

68. Defendant's owners knew that convicted sex offenders / child rapists often stay at motels like their motel because convicted sex offenders / child rapists do not have many options available to them for lodging.

69. According to the GBI sex offender registry, Defendant Hilltop Inn had ten registered sex offenders living at its facility in July of 2010.

70. Defendant's owners were not surprised to learn to that in July of 2010 ten (10) convicted sex offenders were using Defendant's facility as their primary residence.

71. Defendant knew or should have known that in July of 2010, CBS 46, wrote a story titled "Motels Become Homes for Rapists, Child Molesters" where it was reported that ten sex offenders were living at Defendant's facility.

72. At all relevant times, Defendant appreciated that there was a heightened risk that sex trafficking could take place at its facility as compared to taking place at other locations because: (i) extensive private sector / non-profit publications informing the public that motels were a hotbed of sex trafficking, (ii) extensive federal / state / local government testimony and press quotations informing the public that Atlanta area motels were a particular hotbed of sex trafficking, (iii) a long running expose in the premier Atlanta newspaper (the AJC) that exposed the extent

of the sex trafficking problem at Atlanta area motels, (iv) the general nature of Defendant's business involving renting private rooms cheaply by the day with each room having a bed where trafficking could occur, (v) Defendant's knowledge that convicted sex offenders / child rapists had few lodging options and often resided at motels like their motel, and (vi) Defendant's knowledge that convicted sex offenders / child rapists were living at their motel.

**<u>Defendant Knew Or Should Have Known About C.B.'s Trafficking</u>**

73. Chappell operated openly and brazenly at the Hilltop Inn.

74. Chappell coerced C.B. into arriving at the property, rented a second room next to his room, demanded (while in the common area) that C.B. work as a prostitute at the property, engaged in disputes in the common area with a potential "John" who was angry with Chappell because C.B. was a minor, cursed at C.B. in the common area, and threatened C.B. in the common area.

75. There is no dispute that C.B. was trafficked at the Hilltop Inn by Chappell. Chappell ultimately agreed to a plea deal where he acknowledged that such trafficking took place.

76. While C.B. was trafficked at the Hilltop Inn, C.B. exhibited numerous well-known and visible signs of a trafficking victim in the common areas / hallways

/ parking lots, of which Defendants knew or should have known, including her age and inappropriate appearance, physical deterioration, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, monitoring / control by Chappell (a person of different gender and race who is 30 years her senior), and lack of luggage / phone / wallet / identification.

77. While she was trafficked at the Hilltop Inn, C.B.'s room evidenced numerous well-known and visible signs of trafficking of which Defendant knew or should have known. These signs included: (i) a fifteen-year-old having her own room with multiple condoms and condom wrappers in that room, (ii) the room being rented by Chappell (a person of different gender and race who is 30 years her senior), and (iii) sex paraphernalia in the room.

78. While C.B. was trafficked at the Hilltop Inn, the common areas (parking lots / hallways / lobby) evidenced numerous well-known and visible signs of trafficking by Chappell of which Defendant knew or should have known. Those signed included: (i) multiple older unannounced guest, (ii) a constant stream of male purchasers accessing C.B.'s room, (iii) male purchasers being present one at a time only and for short period, (iv) male purchasers waiting in the common areas (parking lot, hallways, lobby) for "their turn", and (v) a loud argument between a purchaser and Chappell regarding C.B. being too young to work as a prostitute in the common

area that was loud enough that other guests heard it.

79. While C.B. was trafficked at the Hilltop Inn, Chappell evidenced numerous well-known and visible signs that he was undertaking a trafficking operation of which Defendant knew or should have known. Those signs included: (i) Chappell was a convicted sex offender out on probation who was living at Defendant's motel, (ii) Chappell sought and obtained a second room, (iii) Chappell verbally abused C.B. in the common area and kept close watch over C.B. in the common area, (iv) C.B. was a scantily clad fifteen year old child of a different race who was being ordered around by Chappell in the common area and clearly not a family member, and (v) there was a loud dispute with a potential "John" about C.B. being a minor.

80. Defendant Hilltop Inn observed the signs of trafficking through its staff including its cleaning staff, lobby workers, and other on-site personnel.

81. Defendant Hilltop Inn observed the signs of trafficking through its surveillance cameras that are positioned all around the property.

82. Defendant had actual or constructive knowledge of the trafficking.

83. Defendant had actual or constructive knowledge that C.B. was being trafficked at their hotel.

**Civil Beneficiary Claims Under 18 U.S.C. § 1595(a)**

84.     Two decades ago, Congress made human trafficking a federal crime. Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"), Pub. L. No. 106-386, § 112, 114 Stat. 1464, 1486-87 (2000) (codified at 18 U.S.C. § 1589, *et seq.*)

85.     In 2003, Congress added a civil cause of action "***against the perpetrator***" of a violation of the Act's Criminal provisions, including minor sex trafficking and forced labor sex trafficking. Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875 (codified at 18 U.S.C. § 1595(a)) (emphasis added).

86.     In 2008, Congress significantly expanded the civil cause of action.

87.     Now, under § 1595(a), the victim can sue not only the trafficking perpetrator – the person who committed the criminal offenses – but also "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or ***should have known*** has engaged in" minor sex trafficking or forced labor sex trafficking. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044, 5067 (2008) (codified at 18 U.S.C. § 1595(a)) (emphasis added)

88. In 2008, "Congress gave victims a cause of action against those who have profited from their exploitation" and this amendment "opened the door for liability against facilitators who did not directly traffic the victim[] but benefitted from what the facilitator should have known was a trafficking venture." *A.B. v. Marriott Int'l, Inc.*, No. CV 19-5770, 2020 WL 1939678, at *7 (E.D. Pa. Apr. 22, 2020)(quoting Charles Doyle, Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Act of 2008 (P.L. 110-457): Criminal Law Provisions (2009)); *Plaintiff A. v Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3, (N.D. Ga. Sept 9, 2014)

89. Under the civil beneficiary provision of 28 U.S.C. § 1595(a), a person is liable for knowingly benefiting from participating in a venture if the defendant "knew or should have known" that the venture violated the criminal provisions of the Trafficking Victims Protection Reauthorization Act of 2008.

90. The "knew or should have known" language specifies a negligence standard. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 799-800 (1998) (acknowledging that "knew or should have known" refers to a negligence standard); *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (holding that a duty arises in a maritime negligence case when the defendant had actual or constructive knowledge which "hinges on whether it knew or should have known about the" risk

creating condition); *see also Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 193-94 (D. Mass. 2019) (collecting cases on this issue); *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171 (E.D. Pa. 2020) (also collecting cases on this issue).

**Count 1:** **Civil Beneficiary Sex Trafficking Under 18 U.S.C. 1595(a) For Chappell's Violation of 18 U.S.C. 1591(a)(1)**

91. Pursuant to 18.U.S.C § 1595(a), an individual like C.B. who was a victim of sex trafficking under 18 U.S.C. 1591(a)(1), may bring a civil action against "whoever knowingly benefitted, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" a violation of 18 U.S.C. 1591(a)(1).

92. C.B. may bring a civil action against Defendant Hilltop Inn because Defendant Hilltop Inn meets this standard.

93. Defendant Hilltop Inn "knowingly benefited financially" because Chappell gave Defendant Hilltop Inn money and in exchange Defendant Hilltop Inn rented Chappell to two separate motel rooms. *See, e.g., Ricchio v. McLean,* 853 F.3d 553, 556 (1st Cir. 2017) ("knowingly benefited" prong satisfied by renting room); *Ricchio v. Bijal*, 386 F. Supp. 3d at 131 ("renting of a single room for a short period could constitute a 'benefit' within the meaning of the statute."); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio 2019) (finding room

rental itself sufficient and rejecting Defendant's argument that there must be a causal relationship between the room rental and the sex trafficking); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019).

94. Chappell took the money he made from sex trafficking C.B. and used that money to reimburse himself for the payments made to Defendant Hilltop Inn for the rooms.

95. Defendant Hilltop Inn's received a financial benefit (motel rent money) by participating in a venture with Chappell to rent Chappell hotel rooms and those rooms were used to traffic C.B.

96. Defendant Hilltop Inn had a direct business relationship with Chappell – a tacit agreement to rent Chappell the rooms.

97. Defendant Hilltop Inn's actions supported, facilitated, and furthered Chappell's sale and victimization of C.B.

98. Defendant Hilltop Inn's omissions supported, facilitated, and furthered Chappell's sale and victimization of C.B.

99. For all of the reasons stated in this Complaint – 1st Amended and any other reasons to be proven at trial, Defendant Hilltop Inn knew or should have known that C.B. was being trafficked for sex by Chappell in violation of 18 U.S.C. 1591(a)(1).

100. Despite having actual or constructive knowledge of C.B.'s trafficking, Defendant Hilltop allowed the trafficking to occur.

**Count 2:** **Civil Beneficiary Labor Trafficking Under 18 U.S.C. 1595(a) For Chappell's Violation of 18 U.S.C. 1589(a)(2) & 4**

101. Pursuant to 18.U.S.C § 1595(a), an individual like C.B. who was a victim of labor trafficking under 18 U.S.C. 1589(a)(2) and (4), may bring a civil action against "whoever knowingly benefitted, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" a violation of 18 U.S.C. 1589(a)(2) and (4).

102. C.B. may bring a civil action against Defendant Hilltop Inn because Defendant Hilltop Inn meets this standard.

103. Defendant Hilltop Inn "knowingly benefited financially" because Chappell gave Defendant Hilltop Inn money and in exchange Defendant Hilltop Inn rented Chappell to two separate motel rooms. *See, e.g., Ricchio v. McLean,* 853 F.3d 553, 556 (1st Cir. 2017) ("knowingly benefited" prong satisfied by renting room); *Ricchio v. Bijal*, 386 F. Supp. 3d at 131 ("renting of a single room for a short period could constitute a 'benefit' within the meaning of the statute."); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio 2019) (finding room rental itself sufficient and rejecting Defendant's argument that there must be a causal

relationship between the room rental and the trafficking); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019).

104. Chappell took the money he made from labor trafficking C.B. and used that money to reimburse himself for the payments made to Defendant Hilltop Inn for the rooms.

105. Defendant Hilltop Inn's received a financial benefit (motel rent money) by participating in a venture with Chappell to rent Chappell hotel rooms and those rooms were used to traffic C.B.

106. Defendant Hilltop Inn had a direct business relationship with Chappell – a tacit agreement to rent Chappell the rooms.

107. Defendant Hilltop Inn's actions supported, facilitated, and furthered Chappell's victimization of C.B.

108. Defendant Hilltop Inn's omissions supported, facilitated, and furthered Chappell's victimization of C.B.

109. For all of the reasons stated herein, Defendant Hilltop Inn knew or should have known that C.B. was being trafficked by Chappell in violation of 18 U.S.C. 1589(a)(2) and (4).

110. Despite having actual or constructive knowledge of C.B.'s trafficking, Defendant Hilltop allowed the trafficking to occur.

## Movement in Interstate Commerce

111. The venture in which Defendant participated in affected interstate commerce for numerous reasons including the use of credit card / debit card machines for the purchase of the rooms, the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the requirement and dealings with franchisors (such as Econolodge) to ensure that certain standards were met, the use of credit cards to post advertisements through Backpage.com for selling C.B. in a commercial sex act, the posting of advertisements through Craigslist.com for a free room, the internet chats between Chappell and C.B., the pre-meeting phone conversations between Chappell and C.B., the use of interstate highways to transport C.B. to the motel, and other reasons to be proven at trial.

## Proximate Cause And Damages

111. As a direct and proximate result of Defendant's acts and omissions, C.B. suffered substantial physical, emotional, and psychological harm and other damages.

112. Defendant is joint and severally liable with Chappell and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to C.B.

113. Defendant is liable for Plaintiff C.B.'s damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

114. Plaintiff brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

a. Personal injuries;

b. Past, present and future pain and suffering;

c. Disability;

d. Disfigurement;

e. Mental anguish;

f. Loss of the capacity for the enjoyment of life;

g. Loss of earning capacity;

h. Lost wages;

i. Diminished capacity to labor;

j. Incidental expenses;

k. Past, present and future medical expenses;

l.   Permanent injuries;

m.   Attorney's fees;

n.   Punitive damages; and

o.   Consequential damages to be proven at trial.

115.   Punitive damages should be imposed upon the Defendant without limitation or cap for its actions which are explained more fully above.

116.   Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

## **Prayer for Relief**

WHEREFORE, Plaintiff prays for a judgment against the Defendant and for the following:

1)   That process and summons issue requiring Defendant to appear as provided by law to answer the allegations of the Complaint;

2)   Plaintiff be awarded actual damages in amounts to be shown at trial;

3)   Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendant;

4)   Punitive damages be imposed upon the Defendant;

5)   Plaintiff be awarded a trial by jury; and

6) Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

This 30th day of November, 2020.

*/s/ Matthew B. Stoddard*
Matthew B. Stoddard, Esq.
Ga. Bar No.: 558215
Janelle E. Zabresky, Esq.
Ga. Bar No.: 385383
THE STODDARD FIRM
1534 N Decatur Road
P: 470-467-2200
F: 470-467-1300
matt@LegalHelpGa.com
janelle@LegalHelpGa.com
***Attorneys for Plaintiff***

# CERTIFICATES OF COMPLIANCE & SERVICE

This is to certify that the foregoing document has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the pleading was prepared using Times New Roman font, point 14.

I further certify that I have served a true and correct copy of the foregoing upon all counsel of record using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

<u>Attorneys for Defendant:</u>
Roger E. Harris, Esq.
Sabrina L. Atkins, Esq.
SWIFT CURRIE MCGHEE & HIERS
The Peachtree, Suite 300
1355 Peachtree Street NE
Atlanta, GA 30309
P: 404-888-6162
F: 404-888-6199
Roger.harris@swiftcurrie.com
Sabrina.atkins@swiftcurrie.com

This 30th day of November 2020.

*/s/ Matthew B. Stoddard*
Matthew B. Stoddard